IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE, WESTERN DIVISION

---

MEAGHAN YBOS;
MADISON GRAVES; and
RACHEL JOHNSON                                                      Plaintiffs,

vs.                                                                Cause No. _____
                                                                   Jury Demanded

CITY OF MEMPHIS, TENNESSEE;                                        Defendants
COUNTY OF SHELBY, TENNESSEE;
SHELBY COUNTY RAPE CRISIS CENTER, as agent;
MEMPHIS SEXUAL ASSAULT RESOURCE CENTER, as agent;
BILL GIBBONS, as agent;
AMY WEIRICH, SHELBY COUNTY DISTRICT ATTORNEY, as agent;
LARRY GODWIN; as agent
TONEY ARMSTRONG, MEMPHIS POLICE DIRECTOR, as agent; and
ANTHONY ALLIANO; and
Other unknown entities and unnamed individuals.

---

JOINT COMPLAINT FOR DAMAGES

---

COMES NOW the Plaintiffs, Meaghan Ybos, Madison Graves and Rachel Johnson by

and through counsel of record, Paul Forrest Craig and Daniel Owen Lofton and files this their

Joint Complaint for Damages against the City of Memphis, Shelby County and their agents as

designated herein and also against Anthony Alliano and would respectfully show unto this

honorable Court as follows:

**Nature of Action**

1.      Plaintiffs are individuals who reported sexual assaults to third parties, had their personal

body fluid samples as well as DNA evidence from their rapists removed from their bodies and

placed within sexual assault evidence kits, and whose sexual assault kits were subsequently

transported to the City of Memphis, Shelby County and its agents for testing, evidentiary and

custodial purposes. The City of Memphis, Shelby County and its agents have failed to timely submit, responsibly handle, and make due diligence on approximately 12,000 (an estimate of only the known untested rape kits as of this filing) sexual assault kits which is the subject of a related case and class action filed before this honorable Court, See *Jane Doe vs. City of Memphis* (13-cv-03002).

Meaghan Ybos, Madison Graves and Rachel Johnson have each brought distinct factual allegations, legal claims, and special damages surrounding the City of Memphis, Shelby County and its agents' handling of the Anthony Alliano case.  Plaintiffs are victims of the serial rapist, Anthony Alliano, and each Plaintiff has suffered particularized mental anguish resulting in physical manifestation. These damages are directly and proximately attributable to the negligent handling of the three rape kits submitted by these victims and the negligent investigations concerning the same which were carried out and specially undertaken by the City, County and its agents.  Anthony Alliano's serial assault upon numerous women in the City of Memphis and Shelby County continued for nearly a decade after the submission of rape kits on the part of Meaghan Ybos and Madison Graves.

The three kits in question were tested years after their submission to Defendants at which time total spoilage or a significant degree of spoilage had likely occurred such that the submission of the evidence had been effectively rendered a nullity. All of this amounts to violations of these Plaintiffs' Fourth Amendment constitutional rights, due process property rights, substantive due process rights, and violations of the equal protection clause.

### Parties

2.      Meaghan Ybos is a resident of the City of Cordova, with a street address of 1576 Applingwood Cove, Cordova, Tennessee 38016.

3.      Madison Graves is a resident of Olive Branch, with a street address of 10364 Tallyho Drive, Olive Branch, Mississippi 38654.

4.      Rachel Johnson is a resident of Houston, with a street address of 4900 Floyd Street, Unit No. 4, Houston, Texas 77007.

5.      Defendant, City of Memphis, (hereinafter referred to as "Defendant" or "City of Memphis") is a municipal entity, located in Shelby County, Tennessee, recognized by the State of Tennessee as a properly organized and legal municipal entity, which operates the Memphis Police Department and can be served with process through the City Attorney, Herman Morris at his office located at 125 North Main Street, Suite 336, Memphis, TN 38103.

6.      Defendant, County of Shelby, Tennessee is a county government organized under the laws of the State of Tennessee, which operates the Shelby County Sheriff's Department and can be served with process through the Office of the Mayor, Mark Luttrell located  at 160 North Main Street, 11th Floor, Memphis, TN 38103.

7.      Defendant, Shelby County Rape Crisis Center is an agent and affiliate of Shelby County which may be served notice at its operating location of 1750 Madison Avenue, Ste. 102, Memphis, TN 38104.

8.      Defendant, Memphis Sexual Assault Resource Center was formally an agent of the City of Memphis and is presently an agent and affiliate of Shelby County and may be served notice at 2675 Union Extended, Memphis, TN 38112.

9.      Defendant, Bill Gibbons is the former Shelby County District Attorney and is an agent and affiliate of Shelby County who may be served notice as to his particularized involvement at the Office of the Shelby County District Attorney, 201 Poplar Avenue, 3rd Floor, Memphis, TN 38103.

10.     Defendant, Amy Weirich, is the Shelby County District Attorney and is an agent of Shelby County who may be served with notice at 201 Poplar Avenue, 3rd Floor, Memphis, TN 38103.

11.     Defendant, Larry Godwin, is the former Memphis Police Director and may be served with notice as to his particularized involvement at 201 Poplar Avenue, Memphis, TN 38103.

12.     Defendant, Toney Armstrong, is the Memphis Police Director and may be served with notice at 201 Poplar Avenue, Memphis, TN 38103.

13.     Defendant, Anthony Alliano is a resident of the City of Memphis currently incarcerated who may be served with process through his attorney of record Andrew Plunk whose office address is 6489 Quail Hollow Road - #102, Memphis, TN 38120.

**Jurisdiction and Venue**

13.     The wrongful acts, omissions and injuries described in the body of this Complaint all occurred in Memphis, Shelby County, Tennessee and venue is appropriate in this judicial district pursuant to 28 U.S.C. Sec. 1391.

14.     The jurisdiction of this lawsuit is proper in the United States District Court for the Western District of Tennessee, Western Division. Jurisdiction lies with this Court pursuant to 28 U.S.C. Sec. 1331 and 1343 and supplemental jurisdiction pursuant to 28 U.S.C. 1367.

15.     This action is brought pursuant to 42 U.S.C. Sec. 1983 and 1985, the United States Constitution, Tennessee state law and the common law.

**Procedural Posture**

16.     Plaintiffs herein are alleging particularized and individually relevant facts and claims; they are seeking redress for special damages and are suing, the City of Memphis, Shelby County and their agents as well as their assailant, serial rapist, Anthony Alliano.  It is hereby specifically

pled that all Defendants indicated herein (excluding Anthony Alliano) are agents and principals of one another and have acted in such a manner as to ratify the actions, conduct and policies of one another as to all allegations raised by this lawsuit.

17.    All of the above reasons are sufficient to warrant that this action be maintained as a separate cause number from the heretofore existing class action suit referenced herein, *Jane Doe vs. City of Memphis* (13-cv-03002).  The relevant facts, standards of care and nature of the violations at issue supersede those raised by said class action in that these concern a continuing pattern crime which should have been handled with the utmost priority and diligence; this inquiry far exceeds the general sweeping allegations previously made and will concern numerous additional facts and patterns of fact.  The instant case is properly a related case which may or may not be joined to the existing class action but which will invariably require a separate adjudication and rendering by this honorable Court as any blanket adjudication would fail to address particularized allegations, claims and damages of these individual Plaintiffs.

18.    There are distinct questions of law and fact raised by Meaghan Ybos, Madison Graves, and Rachel Johnson; these Plaintiffs pray that their claims be handled in accordance herewith.

## **Meaghan Ybos - Facts**

19.    Meaghan Ybos was raped in numerous manners by an unknown assailant (later determined to be Anthony Alliano) on May 19, 2003; he acted as a sexual predator and stalker. There was no existing relationship between these two individuals in any regard whatsoever. He spied on her and accosted her as she was entering her parents' house in Cordova Tennessee, subdued her, restrained her and raped her in numerous manners on the date in question.  At the time of the rape, this part of Cordova was within the jurisdiction of Shelby County.

20.    Alliano's face was hidden at all times such that DNA evidence was of particular import.

Ms. Ybos was a 16 year old minor child at the time of the incident in question. This necessarily required a heightened level of investigation from Shelby County, the City of Memphis and its agents and specifically Investigator White as their inquiries, her statements and assertions needed extraordinary clarification and explanation given the fact that she was a minor and a virgin at the time of the incident. The *modus operandi* for Anthony Alliano's rape crimes was generally the same for each subsequent victim such that the City, County and its agents had sufficient knowledge and/or constructive knowledge so as to determine his identity and prevent him from causing further harm.

21.     Immediately after the rape, Shelby County Sheriff's Deputies responded to the emergency call, came to the scene and proceeded to begin the investigation. The inquiries focused largely on her and presupposed the falsity of her story rather than on the particular facts relevant to the assault. No special consideration was given to the fact nor was any special procedure implemented to appropriately handle the fact that she was a minor child without any prior experience in sexual activity.

22.     Ms. Ybos was subsequently taken to the Memphis Sexual Assault Resource Center where she was informed that her submission to a full forensic examination of all of her body, including all private areas would allow the police department to diligently and more efficiently conduct their investigation of the rape and substantially aid in their effort to identify and apprehend a suspect.

23.     Ms. Ybos consented to said examination on this basis; it was never contemplated nor imagined that said rape kit would be misplaced, discarded or otherwise forgotten about. No such disclaimer was made.  On the basis outlined herein, Ms. Ybos consented to the forensic examination of her body.  She entrusted the custody of her personal body fluid sample as well as

the DNA sample of her assailant to the agents of the City of Memphis and Shelby County.  She entrusted that each of these would be used responsibly and in a diligent manner to identify, apprehend and prosecute the rapist, Anthony Alliano.  She did this in lieu of hiring an independent laboratory and private investigator to obtain DNA testing and match the same with the FBI database and otherwise conduct an informal investigation.

23.     Meaghan Ybos lived in perpetual fear and anxiety following her rape from May 19, 2003 until March 26, 2013 when it was realized that her attacker had in fact been incarcerated as this was the date that he pled guilty to the crime in question. Throughout this time period she saw multiple doctors for this anxiety which was of sufficient severity that it had physical manifestations.

24.     From May 2003 until May 2012, Anthony Alliano was at large and has now been convicted of raping 8 separate women many of which occurred long after Ms. Ybos' rape kit was submitted. By information and belief, the City of Memphis, Shelby County and its agents possessed sufficient information including the three rape kits at issue in this Complaint to timely identify and apprehend Anthony Alliano thereby preventing subsequent victims from being assaulted.

25.     In May 2012, Anthony Alliano was arrested due to a separate incident; he was caught using the credit card of Rachel Johnson. Alliano's arrest was not due to a successful processing of the rape kits but rather due to proper tracing of the stolen credit card in question. There was a separate basis for this investigation as Ms. Johnson's husband to whom she began obtaining a divorce from at that time had misappropriated Ms. Johnson's other credit cards, assets and property.

26.     In May 2012 when Anthony Alliano was arrested Meaghan Ybos saw a video clip of this

incident on the local news and suspected that the accused could have been involved in or have been her aggressor. She was in no way certain of this nor did she have any affirmative knowledge or reason to know this; rather, she had a suspicion of this fact and sought to inquire further thereon. On this basis, she contacted the Memphis Police Department and inquired as to her kit. She was informed by Sergeant Sloan that her kit had not for approximately 9 years even been submitted to TBI for financing and subsequent approval for testing.

27.     At this time, Ms. Ybos reasonably believed in good faith that the City, County and its agents had a methodology in place that was effective to prevent rapes and utilize the rape kits that had been submitted in confidence. She had been given assurances that the rape kit she submitted would be put to special use to identify the attacker in question and she further assumed that there was a system and procedure in place to inventory, safe keep and appropriately prioritize her rape kit. She assumed that procedure had been followed as an arrest had been made and that there was a legitimate explanation as to why her kit had not been tested.

28.     In August 2013, Ms. Ybos was informed, as was the public, that there were over 2000 rape kits in Memphis and Shelby County which had not been submitted for testing. On November 5, 2013, Ms. Ybos was informed as was the public that the approximate untested rape kits has risen to 12,000. At this time she was aware that there was no methodology in place to handle rape kits and that there was no effective inventorying system and further that the City, County and its agents were not even aware of the rape kits which it possessed. At this time she became aware that her constitutional protections had been offended and that the City, County and its agents had acted negligently and recklessly in their handling of her particular investigation.

## Madison Graves – Facts

29.     Madison Graves was raped by an unknown assailant (later determined to be Anthony

Alliano) on May 21st, 2003; he acted as a sexual predator and stalker. There was no existing relationship between these two individuals in any regard whatsoever. He spied on her and accosted her as she was entering her parents' house in Cordova Tennessee, subdued her, restrained her and raped her on the date in question. This rape occurred with the same *modus operandi* as that which occurred in Ms. Ybos' case.

30.      Alliano's face was hidden at all times such that DNA evidence was of particular import. Ms. Graves was a 12 year old minor child at the time of the incident in question. This necessarily required a heightened level of investigation from Shelby County, the City of Memphis and its agents as their inquiries, her statements and assertions needed extraordinary clarification and explanation given the fact that she was a minor and a virgin at the time of the incident. The *modus operandi* for Anthony Alliano's rape crimes was generally the same for each subsequent victim such that the City, County and its agents necessarily had cumulative knowledge and/or constructive knowledge sufficient to determine his identity and prevent him from causing further harm.

31.      Immediately after the rape, the Memphis Police Department responded to the emergency call, came to the scene and proceeded to begin the investigation. The inquiries focused largely on her and presupposed the falsity of her story rather than on the particular facts relevant to the assault. No special consideration was given to the fact nor was any special procedure implemented to appropriately handle the fact that she was a minor child without any prior experience in sexual activity.

32.      Ms. Graves was subsequently taken to the Memphis Sexual Assault Resource Center where she was informed that her submission to a full forensic examination of all of her body, including all private areas would allow the police department to diligently and more efficiently

conduct their investigation of the rape and substantially aid in their effort to identify and apprehend a suspect.

32.    Ms. Graves consented to said examination on this basis; it was never contemplated nor imagined that said rape kit would be misplaced, discarded or otherwise forgotten about. No such disclaimer was made.  On the basis outlined herein Ms. Graves consented to the forensic examination of her body.  She entrusted the custody of her personal body fluid sample as well as the DNA sample of her assailant to the agents of the City of Memphis and Shelby County.  She entrusted that each of these would be used responsibly and in a diligent manner to identify, apprehend and prosecute the rapist, Anthony Alliano.  She did this in lieu of hiring an independent laboratory and private investigator to obtain DNA testing and match the same with the FBI database and otherwise conduct an informal investigation.

33.    Ms. Graves lived in perpetual fear and anxiety following her rape from May 21, 2003 until March 26, 2013 when it was realized that her attacker had in fact been incarcerated as this was the date that he pled guilty to the crime in question. Throughout this time period she saw multiple doctors for this anxiety which was of sufficient severity that it had physical manifestations.   Ms. Graves spent the next 10 years in therapy, suffering from Bi-Polar Disorder, as well as PTSD (post traumatic stress disorder).  She has sleeping disorders and has daily physical manifestations of the harm directly attributable to the violation of her constitutional rights and the negligent and reckless investigation conducted by the City, County and its agents.

34.    From May 2003 until May 2012, Anthony Alliano was at large and has now been convicted of raping 8 separate women many of which occurred long after Ms. Graves' rape kit was submitted. By information and belief, the City of Memphis, Shelby County and its agents possessed sufficient information including the three rape kits at issue in this Complaint to timely

identify and apprehend Anthony Alliano thereby preventing subsequent victims from being assaulted.  This includes all information from Ms. Ybos' victimization and Ms. Graves' victimization as outlined herein.

### Rachel Johnson  – Facts

35.     On June 29, 2010 Ms. Johnson was staying overnight again in a Cordova home when an at that time unknown assailant (later proved to be Anthony Alliano) broke into the house with a facial covering and threatened to kill her and did in fact rape her.  Alliano stole Ms. Johnson's credit card at this time. Alliano acted as a sexual predator and stalker.  There was no existing relationship between these two individuals in any regard whatsoever.  He spied on her and accosted her inside the house in Cordova Tennessee, subdued her, restrained her and raped her on the date in question.  This rape occurred with a very similar *modus operandi* to that which occurred in Ms. Ybos' case and Ms. Graves' case.

36.      Alliano's face was hidden at all times such that DNA evidence was of particular import. The *modus operandi* for Anthony Alliano's prior and subsequent rape crimes was generally the same such that the City, County and its agents necessarily had cumulative knowledge and/or constructive knowledge sufficient to determine Alliano's identity and prevent him from causing further harm.

37.     Ms. Johnson was subsequently taken to the Memphis Sexual Assault Resource Center where she was informed that her submission to a full forensic examination of all of her body, including all private areas would allow the police department to diligently and more efficiently conduct their investigation of the rape and substantially aid in their effort to identify and apprehend a suspect.

38.     Ms. Johnson consented to said examination on this basis; it was never contemplated nor

imagined that said rape kit would be misplaced, discarded or otherwise forgotten about. No such disclaimer was made.  On the basis outlined herein Ms. Johnson consented to the forensic examination of her body.  She entrusted the custody of her personal body fluid sample as well as the DNA sample of her assailant to the agents of the City of Memphis and Shelby County.  She entrusted that each of these would be used responsibly and in a diligent manner to identify, apprehend and prosecute the rapist, Anthony Alliano.  She did this in lieu of hiring an independent laboratory and private investigator to obtain DNA testing and match the same with the FBI database and otherwise conduct an informal investigation.

39.     Ms. Johnson lived in perpetual fear and anxiety following her rape from June 2010 until his arrest in March 26, 2013 when it was realized that her attacker had in fact been incarcerated as this was the date that he pled guilty to the crime in question. Throughout this time period she saw multiple doctors for this anxiety which was of sufficient severity that it had physical manifestations.   Ms. Johnson suffered a severe back injury at the time of her rape as she was subdued and assaulted.  This required her to undergo surgery whereby she incurred medical, bills pain and expenses. This back injury and her emotional anxiety pain and suffering are all directly attributable to the violation of her constitutional rights and the negligent and reckless investigation conducted by the City, County and its agents.

40.     Ms. Johnson was told by representatives of the Memphis Police Department in June 2010 that her rape kit would be tested in approximately 6 months.  She was later informed approximately one year after her rape that her kit was being "processed."

41.     From May 2003 until May 2012, Anthony Alliano was at large and has now been convicted of raping 8 separate women many of which occurred long after Ms. Graves' and Ms. Ybos' rape kit was submitted. By information and belief, the City of Memphis, Shelby County

and its agents possessed sufficient information including the three rape kits at issue in this Complaint to timely identify and apprehend Anthony Alliano thereby preventing subsequent victims from being assaulted.  This includes all information from Ms. Ybos' victimization and Ms. Graves' victimization as outlined herein.

## Common Facts

42.    At all time complained of Defendants Memphis Sexual Assault Resource Center, Bill Gibbons, Amy Weirich, Larry Goodwin and Toney Armstrong acted as the agent of the principal Defendant City of Memphis. And, Defendant City of Memphis ratified the actions of their agents Defendants Memphis Sexual Assault Resource Center, Bill Gibbons, Amy Weirich, Larry Goodwin and Toney Armstrong.

43.     At all time complained of Defendants Shelby County Sexual Assault Resource Center, Bill Gibbons,  and Amy Weirich acted as the agent of the principal Defendant Shelby County, Tennessee. And, Defendant Shelby County Tennessee ratified the actions of their agents Defendants Memphis Sexual Assault Resource Center, Bill Gibbons, and Amy Weirich.

44.    For a period of over twenty-five years, the Defendants failed to properly test in excess of 12,000 sexual assault kits which were collected for the purpose of investigating sexual assault cases in the Memphis/Shelby County, Tennessee area.

45.    Based upon information and belief, Anthony Alliano is a serial rapist who is believed to have committed as many as over a 100 rapes in the Memphis/Shelby County, Tennessee area, with the majority of these rapes and sexual assault occurring in the area known as Cordova.

46.    The testing of the sexual assault kits did not lead to the arrest of Anthony Alliano.

47.    Based upon information and belief, if the sexual assault kits had been properly, and timely tested, the Defendants would have known of the presence of a serial rapist in the

Memphis/Shelby County Tennessee area. The proper and timely testing of the sexual assault kits would have identified a single individual as the perpetrator of these serial rapes. The proper and timely testing of the sexual assault kits would have identified the pattern of this serial rapist and greatly assisted with the investigation of these sexual assaults and rapes.  This would have allowed proper collectivizing of all relevant files, witness, facts and information concerning Alliano's numerous assaults.  This would have allowed a proper and focused investigation from a single lead investigator and / or effective communication from a team of investigators.

48.      The Defendant's failure to properly and timely test these sexual assault kits allowed, aided and assisted a serial rapist in perpetrating his attacks upon the women of the Memphis/Shelby County Tennessee area for a period of in excess of nine years.

49.      Further Alliano had been arrested in December 23, 2003 for illegal possession of "date rape drugs"; this incident provided further notice of the serial crimes in progress to the City, County and its agents.

50.      In April 24, 2004, Alliano was arrested for raping a 16 year old girl after being seen dragging her into a motel room within the city limits; this incident provided further notice to the City, County and its agents that a serial crime was developing and or in progress.

51.      In June 9, 2005 Alliano breaks into a home assaults a 26 year old woman by brutalizing her choking her bruising her eyes and punching her in the face; this incident provided further notice to the City, County and its agents that a serial crime was developing and or in progress.

52.      On January 1, 2010, Alliano breaks into another home in the Cordova area near Germantown Parkway and Dexter Road again using a ski mask / facial covering and rapes a 35 year old woman; this incident provided further notice to the City, County and its agents that a serial crime was developing and or in progress.

53.     July 10, 2010, Alliano rapes a 22 year old woman attacking her until she passes out; this incident provided further notice to the City, County and its agents that a serial crime was developing and or in progress.

54.     In May 2012, Anthony Alliano was arrested due to a separate incident; he was caught using the credit card of Rachel Johnson. Alliano's arrest was not due to a successful processing of the rape kits or a successful rape investigation but rather due to proper tracing of the stolen credit card in question.

55.     In May 2012 when Anthony Alliano was arrested Meaghan Ybos saw a video clip of this incident on the local news and suspected that the accused could have been involved in or have been her aggressor. She was in no way certain of this nor did she have any affirmative knowledge or reason to know this; rather, she had a suspicion of this fact and sought to inquire further thereon. On this basis, she contacted the Memphis Police Department and inquired as to her kit.  She was informed by Sergeant Sloan that her kit had not been - approximately 9 years later - even been submitted to TBI for financing and subsequent approval for testing.

57.     In May 2012, Ms. Ybos, Ms. Johnson and Ms. Graves reasonably believed in good faith that the City, County and its agents had a methodology in place that was effective to prevent rapes and utilize the rape kits that had been submitted in confidence. They had been given assurances that the rape kit she submitted would be put to special use to identify the attacker in question and she further assumed that there was a system and procedure in place to inventory, safe keep and appropriately prioritize her rape kit.  They assumed that procedure had been followed as an arrest had been made and that there was a legitimate procedure in place as to the handling of their rape kits.

58.     In August 2013, Ms. Ybos, Ms. Graves and Ms. Johnson were informed, as was the

public, that there were over 2000 rape kits in Memphis and Shelby County which had not been submitted for testing. On November 5, 2013, Plaintiffs were informed as was the public that the approximate untested rape kits has risen to 12,000. At this time she was aware that there was no methodology in place to handle rape kits and that there was no effective inventorying system and further that the City, County and its agents were not even aware of the rape kits which it possessed.  At this time she was aware that her constitutional protections had been offended and that the City, County and its agents had acted negligently and recklessly in their handling of her particular investigation.

59.    At this time – November, 5, 2013, the Plaintiffs became aware of the fact that the failures of the Defendants to properly test their kits impeded the apprehension of the perpetrator of their sexual assault and but for this failure to properly test these kits the perpetrator, Anthony Alliano, would have been prevented from continuing his spree of sexual assaults as outlined herein and as against Ms. Rachel Johnson specifically.

60.    The Memphis Sexual Assault Resource Center (hereinafter "MSARC") in 2003 was operated by the City of Memphis but is currently operated by Shelby County by and through the Memphis Shelby County Health Department.

61.    The City of Memphis, Shelby County and its agents by information and belief did not have an effective inventorying system for the rape kits it processed, nor was there any effective inter-departmental communication as to the prioritization of certain kits that it prepared and as to certain rape cases being investigated.  There was no effective organization of rape kits taken by, received by and turned over by the Memphis Sexual Assault Resource Center.  Further there was no system for storage of rape kits, and this failure exposed said kits to ruination.

62.    By information and belief Defendants utilized approximately three different storage

facilities for rape kits none of which are suited for the same; they are not climate controlled. Further, there is no cataloging, or other inventorying of the same such that the City of Memphis is and was without basic knowledge as to the whereabouts of the rape kits in question, the condition of the same and the facts particular thereto.

63.     Unknown to Plaintiffs the City of Memphis had the policy, practice and/or custom of discarding sexual assault evidence kits.

64.     Unknown to Plaintiffs the City of Memphis had a policy, practice, and/or custom of failing to submit sexual assault evidence kits for testing.

65.     Based upon information and belief, there are an estimated 12,000 sexual assault evidence that have gone untested over a period of several decades, dating back to the late 1980's.

66.     A disproportionate number of the victims whose body fluid were taken and located in the sexual assault evidence kits were women.

67.     Defendants failed to:

    a.      Provide aid to the injured Plaintiffs;

    b.      Assure that evidence was not lost:

    c.      Determine if an offense was committed;

    d.      Affect an arrest of the accused;

    e.      Arrange for the timely analysis and evaluation of evidence;

    f.      Determine if other crimes may have been committed by the suspect;

    g.      Identify that there was a serial rapist preying upon the women of the Memphis/Shelby County area;

    i       Warn the Memphis/Shelby County area of a serial rapist being in the area.

68.     Based upon information and belief, the failure to submit sexual assault evidence kits for

testing and the failure to investigate crimes of sexual assault were consistent with an institutional practice of the Defendants, which was known to policy makers or constructively known by policymakers within the Defendants, and was ratified by multiple policy makers within the Defendants. The Defendants failed to take any effective action to prevent their personnel from continuing to engage in such misconduct.

69.     Based upon information and belief, the Defendants had prior notice of the reckless, willful and wanton, deliberate and/or intentional actions of their employees and agents, but took no steps to train them, correct abuses of authority, or discourage the unlawful use of authority. The failure to properly train their employees and agents included the failure to instruct them as officers of the peace and in applicable laws of Tennessee.

70.     Based upon information and belief, Defendants authorized, tolerated as institutional practices, and ratified the misconduct above by:

a.      Failing to properly supervise the police personnel;

b.      Failing to properly train the police personnel;

c.      Failing to properly discipline, restrict, and control employees, including but not limited to investigating crimes of sexual assaults of females;

d.      Failing to take adequate precaution in the hiring, promotion, and retention of police personnel;

e.      Failing to forward to the office of the District Attorney of Shelby County evidence of criminal acts committed in Shelby County;

f.      Failing to notify the Department of Children Services of claims of sexual assault of minors;

g.      Failing to protect and ensure evidence is not lost or mishandled or spoiled; and

      h.      Failing to discipline, restrict and control Defendant's employees for failing to investigate crimes of sexual assault of females;

      i.      Failing to establish and/or assure the functioning of a *bona fide* and meaningful departmental system for dealing with complaints of sexual assault and/or complaints of police misconduct, but instead responding to complaints with bureaucratic power and official denials calculated to mislead the public.

71.    Plaintiffs suffered injuries, including but not limited to:

      a.      Physical injuries from the sexual assault and rape; and

      b.      Severe emotional and psychological injuries which have physical manifestation.

72.    The actions of malfeasance alleged herein to be made by the City, County and its agents were by or at the direction and ratification of persons with final policy making authority. The actions of malfeasance and nonfeasance broadly alleged herein were taken so routinely as to create a custom which has the force of law. The confession on the part of the City, County and its agents as to there being 12,000 untested rape kits is evidence of the same.

### Fraudulent Concealment

73.    The Plaintiffs restate, reiterate and incorporate by reference all of the allegations contained in paragraph 1-72 as if set forth herein verbatim.

74.    Defendants owed a fiduciary or confidential relationship toward Plaintiffs as victims of sexual assault who made the allegations to the Defendants. In addition, to the extent Plaintiffs were minors at the time of the sexual assaults, the Defendants owed an additional duty to them by virtue of their minor status.

75.    Defendants, by and through its agents, willfully and wantonly and/or with reckless disregard fraudulently concealed the Plaintiff's' causes of action, as follows:

a. Knowingly and actively suppressed the truth with the intent to prevent inquiry or knowledge of the injury, including but not limited to the following:

b. Failing to test sexual assault evidence kits;

c. Failing to investigate the allegations against the accused;

d. Failing to notify Plaintiffs that their sexual assault evidence kits were not tested for a shocking period of time.

e. Knowingly failing to disclose when Defendants had a duty to speak with the intent to prevent inquiry or knowledge of the injury, including but not limited to the following:

f. Failing to notify testing facilities of the sexual assault evidence kits in its possession;

g. Failing to notify Plaintiffs of their Constitutional rights,

h. Failing to notify Plaintiffs that the sexual assault evidence kits were not tested for an unconscionable amount of time.

76. As a direct and proximate result of Defendants' conduct, Plaintiffs were misled as to their causes of action against Defendants and other parties.

77. On or about August, 2013, Plaintiffs became aware of Defendants' willful and wanton conduct when the Defendant finally released information to local media sources. The full egregiousness of which was realized on and around November 2013 when it was made public by the Defendants that there were an additional 10,000 rape kits had been misplaced and untested.

78. Plaintiffs could not have learned of the existence of their causes of action, when the evidence was in the exclusive control of Defendants.

79. Specifically, Former Police Director Larry Godwin expressly and publicly denied that a backlog of rape kits existed at a time when this was knowingly or recklessly false.

80.     Specifically in Spring of 2011 Former District Attorney Bill Gibbons denied that there was knowledge of a serial rapist and that there was DNA evidence available at a time when this knowledge was vital to the public interest and vital to these Plaintiffs having knowledge of the violation of their constitutional protections.

81.     These denials were made by or at the direction and ratification of persons with final policy making authority as to the City, County and its agents.

## Jury Demand

The Plaintiff demands a jury to try this cause when the issues are joined.

## Constitutional Claims

### As to All Defendants

(excluding Anthony Alliano)

### **MEAGAN YBOS**

#### Count One

#### Violation of 42 U.S.C. Sec. 1983 Due Process Violation

82.     The Plaintiff restates, reiterates and incorporates by reference all of the allegations contained in paragraphs 1-81 as if set forth herein verbatim.

83.     This Count is brought on behalf of Meaghan Ybos.

84.     This Count is brought pursuant to 42 U.S.C. Sec. 1983, against the Defendants.

85.     At all times relevant herein, Defendants acted under the color of state law.

86.     At all times relevant herein, Defendants knew that victims of sexual assault had provided evidence of sexual assault that had been placed in sexual assault evidence kits, and that Defendants were not taking steps to investigate properly the allegations and were not sending the sexual assault kits for testing.

87.     Defendants had a duty to submit the sexual assault kits for testing.

88.     Furthermore, to the extent any of the Plaintiffs suffered sexual assaults by the same perpetrators after they had made reports to Defendants, this created a special relationship between the parties and consequently the Defendants had a duty to intervene and protect the Plaintiff from those perpetrators.

89.     At all times relevant herein, Defendants with deliberate indifference, intentionally, willfully and wantonly, and/or with reckless disregard deprived Plaintiff of rights and/or privileges secured by the constitution, including but not limited to:

     i.     Defendants violated Plaintiff's Due Process Clause property interest in their DNA samples, which had been provided and stored at the Defendants facility, and their right to redress in the courts including right to prosecute civil claims and/or conduct an informal investigation with evidence submitted, by failing to investigate, submit sexual assault evidence kits, or arrest the accused;

     ii.     Defendants violated Plaintiff's Due Process Clause property interests in their persons, by failing to investigate, submit sexual assault evidence kits, or arrest the accused.

90.     Defendants with deliberate indifference, failed to train its police offices as to the rights of persons with whom the police come into contact, including but not limited to Plaintiff.

91.     Defendant's deliberate indifference, willfully and wantonly, created a danger of and increased the risk of harm by sexual abuse, and/or fostered an environment to exist and continue in which a victim is sexually abused; and/or is in fear of sexual assault.

92.     Defendant violated the Plaintiff's civil rights by having an express policy that, when enforced, caused a constitutional deprivation to Plaintiff, or by having a widespread practice and/or custom that, although not authorized by written law or express municipal policy, was so

permanent and well settled as to constitute a custom or usage with the force of law.

93.     The constitutional injury inflicted by Defendant was caused by a person with final

policymaking authority at the Defendants.

94.     Defendants knew about the above-described conduct and facilitated it, approved it,

condoned it, and/or turned a blind eye to the conduct.

95.     That the actions taken by the Defendants against Plaintiff Meaghan Ybos are separate and

distinct from the actions taken by the other Plaintiffs.

96.     The above-described conduct of Defendants constitutes a violation of Section 1983.

Plaintiff is entitled to compensatory damages for physical injury, emotional pain, suffering,

mental anguish and other non-pecuniary losses.

        WHEREFORE, Plaintiff Meaghan Ybos demands judgment against Defendants, in an

amount to be determined at trial, and any other relief the Court deems just and proper.

Count Two

Violation of 42 U.S.C. Sec. 1983 Equal Protection Violation

97.     The Plaintiff restates, reiterates and incorporates by reference  all of the allegations

contained in paragraphs 1-96 as if set forth herein verbatim.

98.     This Count if brought on behalf of Plaintiff Meaghan Ybos.

99.     This Count is brought pursuant to 42 U.S.C. Sec. 1983, against the Defendants.

100.    At all times relevant herein, Defendants acted under the color of state law.

101.    At all times relevant herein, Defendants knew that victims of sexual assault had provided

evidence of sexual assault that had been placed in sexual assault evidence kits, and that

Defendants were not taking steps to investigate properly the allegations and were not sending the

sexual assault kits for testing.

102.    At all times relevant herein, Defendants with deliberate indifference, intentionally, willfully and wantonly, and/or with reckless disregard deprived Plaintiff of rights and/or privileges secured by the constitution, including but not limited to:

      i.    Defendants violated Plaintiff's Due Process Clause property interest in their DNA samples, which had been provided and stored at the Defendant's facility, and their right to redress in the courts, by failing to investigate, submit sexual assault evidence kits, or arrest the accused;

      ii.    Defendants violated Plaintiff's Due Process Clause property interests in their persons, by failing to investigate, submit sexual assault evidence kits, or arrest the accused.

103.    Defendants with deliberate indifference, failed to train its police offices as to the rights of person with whom the police come into contact, including but not limited to Plaintiff.

104.    Defendant's deliberate indifference, willfully and wantonly, created a danger of and increased the risk of harm by sexual abuse, and/or fostered an environment to exist and continue in which a victim is sexually abused; and/or is in fear of sexual assault.

105.    Defendants' conduct was motivated by gender.

106.    Defendants' conduct was intentional and due to the Plaintiff's female gender.

107.    Defendants have a history of discriminating against females. Defendants treat domestic violence abuse reports from women with less priority than other crimes not involving women reporting domestic violence abuse.

108.    Defendants violated the Plaintiff's civil rights by having an express policy that, when enforced, caused a constitutional deprivation to Plaintiff, or by having a widespread practice and/or custom that, although not authorized by written law or express municipal policy, was so

permanent and well settled as to constitute a custom or usage with the force of law.

109.    The constitutional injury inflicted by Defendants was caused by a person with final

policymaking authority at the Defendants.

110.    Defendants knew about the above-described conduct and facilitated it, approved it,

condoned it, and/or turned a blind eye to the conduct.

111.    That the actions taken by the Defendants against Plaintiff Meaghan Ybos are separate and

distinct from the actions taken by the other Plaintiffs.

112.    The above-described conduct of Defendants constitutes a violation of Section 1983.

Plaintiff is entitled to compensatory damages for physical injury, emotional pain, suffering,

mental anguish and other non-pecuniary losses.

WHEREFORE, Meaghan Ybos demands judgment against Defendants, in an amount to

be determined at trial, and any other relief the Court deems just and proper.

Count Three

Violation of 42 U.S.C. Sec. 1983 Fourth Amendment Violation

113.    The Plaintiff restates, reiterates and incorporates by reference all of the allegations

contained in paragraphs 1-112 as if set forth herein verbatim.

114.    This Count if brought on behalf of Meaghan Ybos.

115.    This Count is brought pursuant to 42 U.S.C. Sec. 1983, against the Defendants.

116.    At all times relevant herein, Defendants acted under the color of state law.

117.    At all times relevant herein, Defendants knew that victims of sexual assault had provided

evidence of sexual assault that had been placed in sexual assault evidence kits, and that

Defendants were not taking steps to investigate properly the allegations and were not sending the

sexual assault kits for testing.

118.    Defendants had a duty to submit the sexual assault kits for testing.

119.    Furthermore, to the extent the Plaintiffs suffered sexual assaults by the same perpetrators after they had made reports to Defendants, this created a special relationship between the parties and consequently the Defendants had a duty to intervene and protect the Plaintiff from those perpetrators.

120.    At all times relevant herein, Defendants with deliberate indifference, intentionally, willfully and wantonly, and/or with reckless disregard deprived Plaintiff of rights and/or privileges secured by the constitution, including but not limited to:

  i.      Defendants violated Plaintiff's Due Process Clause property interest in their DNA samples, which had been provided and stored at the Defendants' facility, and their right to redress in the courts, by failing to investigate, submit sexual assault evidence kits, or arrest the accused;

  ii.     Defendants violated Plaintiff's Due Process Clause property interests in their persons, by failing to investigate, submit sexual assault evidence kits, or arrest the accused.

121.    Defendants with deliberate indifference, failed to train its police offices as to the rights of person with whom the police come into contact, including but not limited to Plaintiff.

122.    Defendants' deliberate indifference, willfully and wantonly, created a danger of and increased the risk of harm by sexual abuse, and/or fostered an environment to exist and continue in which a victim is sexually abused; and/or is in fear of sexual assault.

123.    Defendants violated the Plaintiff's by having an express policy that, when enforced, caused a constitutional deprivation to Plaintiff, or by having a widespread practice and/or custom that, although not authorized by written law or express municipal policy, was so permanent and

well settled as to constitute a custom or usage with the force of law.

124.    After being a victim of a sexual assault Defendants requested Plaintiff to submit personal body fluids and other material to be collected in a sexual assault evidence kit.

125.    Plaintiff was told by the Defendants that the purpose of this request was so that test could be conducted in order to aid law enforcement in the capture of the perpetrators of the sexual assault. This representation was the reason Plaintiff agreed to submit to the examination.

126.    After attaining the body fluids and other evidence, Defendants failed to conduct the promised test.

127.    Based upon information and belief, at the time Defendants requested the collection of said body fluids and other evidence, Defendants knew that said materials were not to be tested.

128.    The collection of body fluids and other evidence, which was not tested, constitutes an unlawful search and seizure in violation of the Fourth Amendment on the part of Defendants.

129.    The constitutional injury inflicted by Defendant was caused by a person with final policymaking authority at the Defendants.

130.    Defendants knew about the above-described conduct and facilitated it, approved it, condoned it, and/or turned a blind eye to the conduct.

131.    That the actions taken by the Defendants against Plaintiff Meaghan Ybos are separate and distinct from the actions taken by the other Plaintiffs.

132.    The above-described conduct of Defendants constitutes a violation of Section 1983. Plaintiff is entitled to compensatory damages for physical injury, emotional pain, suffering, mental anguish and other non-pecuniary losses.

        WHEREFORE, Meaghan Ybos demands judgment against Defendants, in an amount to be determined at trial, and any other relief the Court deems just and proper.

Count Four

Negligence (Injury to the Body)

133.    The Plaintiff restates, reiterates and incorporates by reference  all of the allegations contained in paragraphs 1-132 as if set forth herein verbatim.

134.    As the custodian of the sexual assault kits, Defendants owed a duty to Plaintiff.

135.    The failure to test these sexual assault kits constitutes a breach the duty owed to Plaintiff.

136.    The failure to test these sexual assault kits placed the physical well-being of Plaintiff in peril.

137.    That the failure to test these sexual assault kits on the part of Defendants constitutes an act of negligence.

138.    The failure to investigate these sexual assault cases constitutes a breach the duty owed to Plaintiff.

139.    The failure to investigate these sexual assault cases placed the physical well-being of Plaintiff in peril.

140.    That the failure to investigate these sexual assault cases on the part of Defendants constitutes an act of negligence.

141.    The failure to identify the perpetrator of  these sexual assaults constitutes a breach the duty owed to Plaintiff.

142.    The failure to identify the perpetrator of these sexual assaults placed the physical well-being of Plaintiff in peril.

143.    That the failure to identify the perpetrator of sexual assaults on the part of Defendants constitutes an act of negligence.

144.    The failure to apprehend, arrest or otherwise incarcerate the perpetrator of  these sexual

assaults constitutes a breach the duty owed to Plaintiff.

145.    The failure to apprehend, arrest or otherwise incarcerate the perpetrator of these sexual assaults placed the physical well-being of Plaintiff in peril.

146.    That the failure to apprehend, arrest or otherwise incarcerate the perpetrator of sexual assaults on the part of Defendants constitutes an act of negligence.

147.    As a direct and proximate cause of the acts of negligence on the part of Defendants, Plaintiff suffered severe physical harm and permanent injuries to the body.

148.    The above list is not all inclusive. It is the sincere belief that as discovery in this litigation goes forward there will be additional acts of negligence on the part of these Defendants will be found. As these additional acts of negligence are found, these Plaintiff reserves the right to amend this Complaint.

149.    The broad actions alleged above were taken with sufficient consistency to rise to the level of a custom which has the force of law.

150.    That the actions taken by the Defendants against Plaintiff Meaghan Ybos are separate and distinct from the actions taken by the other Plaintiffs.

151.    The above-described conduct of Defendants constitutes negligence. Plaintiff is entitled to compensatory damages for physical injury, emotional pain, suffering, mental anguish and other non-pecuniary losses.

WHEREFORE, Meaghan Ybos demands judgment against Defendants, in an amount to be determined at trial, and any other relief the Court deems just and proper.

Count Five

Negligence (Injury to Property)

152.    The Plaintiff restates, reiterates and incorporates by reference  all of the allegations

contained in paragraphs 1-146 as if set forth herein verbatim.

153.    As the custodian of the sexual assault kits, Defendants owed a duty to Plaintiff.

154.    The failure to test these sexual assault kits constitutes a breach the duty owed to Plaintiff.

155.    The failure to test these sexual assault kits placed the property of Plaintiff in peril.

156.    That the failure to test these sexual assault kits on the part of Defendants constitutes an act of negligence.

157.    The failure to investigate these sexual assault cases constitutes a breach the duty owed to Plaintiff.

158.    The failure to investigate these sexual assault cases placed the property of Plaintiff in peril.

159.    That the failure to investigate these sexual assault cases on the part of Defendants constitutes an act of negligence.

160.    The failure to identify the perpetrator of these sexual assaults constitutes a breach the duty owed to Plaintiff.

161.    The failure to identify the perpetrator of these sexual assaults placed the property of Plaintiff in peril.

162.    That the failure to identify the perpetrator of sexual assaults on the part of Defendants constitutes an act of negligence.

163.    The failure to apprehend, arrest or otherwise incarcerate the perpetrator of these sexual assaults constitutes a breach the duty owed to Plaintiff.

164.    The failure to apprehend, arrest or otherwise incarcerate the perpetrator of these sexual assaults placed the property of Plaintiff in peril.

165.    That the failure to apprehend, arrest or otherwise incarcerate the perpetrator of sexual

assaults on the part of Defendants constitutes an act of negligence.

166.    As a direct and proximate cause of the acts of negligence on the part of Defendants, Plaintiff suffered sever injury to their property.

167.    The above list is not all inclusive. It is the sincere belief that as discovery in this litigation goes forward there will be additional acts of negligence on the part of these Defendants will be found. As these additional acts of negligence are found, these Plaintiffs reserve the right to amend this Complaint.

168.    That the actions taken by the Defendants against Plaintiff Meaghan Ybos are separate and distinct from the actions taken by the other Plaintiffs.

169.    The above-described conduct of Defendants constitutes negligence. Plaintiff is entitled to compensatory damages for property, emotional pain, suffering, mental anguish and other non-pecuniary losses associated with such loss.

WHEREFORE, Meaghan Ybos demands judgment against Defendants, in an amount to be determined at trial, and any other relief the Court deems just and proper.

Count Six

Gross Negligence

170.    The Plaintiff restates, reiterates and incorporates by reference all of the allegations contained in  paragraphs 1-171 as if set forth herein verbatim.

171.    The fact that there are in excess of 12,000 untested sexual assault evidence kits that have accumulated over a period of approximately thirty years constitutes an act of gross negligence.

172.    That the actions taken by the Defendants against Plaintiff Meaghan Ybos are separate and distinct from the actions taken by the other Plaintiffs.

173.    The above-described conduct of Defendants constitutes gross negligence. Plaintiff is

entitled to compensatory damages for property, emotional pain, suffering, mental anguish and other non-pecuniary losses associated with such loss.

WHEREFORE, Meaghan Ybos demands judgment against Defendants, in an amount to be determined at trial, and any other relief the Court deems just and proper.

Count Seven

Breach of Contract – Detrimental Reliance

174.   The Plaintiff restates, reiterates and incorporates by reference all of the allegations contained in  paragraphs 1-175 as if set forth herein verbatim.

175.   Upon obtaining permission to attain the body fluid and other evidence for the sexual assault evidence kits, Defendants had Plaintiff sign paperwork, including but not limited to a consent form.

175.   These signatures and permission to attain these bodily fluids and other evidence were acquired with the express promise that the materials attained would be properly tested.

176.   This express promise was consideration.

177.   As such, Defendants entered into a valid contract to test the materials attained in the sexual assault kits based upon the promise to test these materials.

178.   Defendants failed to test the sexual assault kits of Plaintiff  in express breach of this promise.

179.   As such, Defendants are is in breach of contract with Plaintiff.

180.   Plaintiffs herein entrusted the Defendants with their personal body fluid samples and the DNA evidence as to the identity of their assailant; this agreement was made on the express assurance said evidence would diligently be used to investigate and prosecute the crime in question. This express assurance was not kept and was a violation of a material term upon which

Plaintiff agreed to the testing and release of evidence.

181.  That the actions taken by the Defendants against Plaintiff Meaghan Ybos are separate and distinct from the actions taken by the other Plaintiffs.

182.  The above-described conduct of Defendants constitutes breach of contract. Plaintiff is entitled to compensatory damages for said breach and all damages associated with said breach.

WHEREFORE, Meaghan Ybos demands judgment against Defendants, in an amount to be determined at trial, and any other relief the Court deems just and proper.

Count Eight

Intentional Infliction of Emotion Distress

183.  The Plaintiff restates, reiterates and incorporates by reference  all of the allegations contained in paragraphs 1-182 as if set forth herein verbatim.

184.  This Count is brought on behalf of Meaghan Ybos.

185.  Defendants, by and through its agents, intentionally breached the following duties:

a.  Failed to submit the sexual assault evidence kits for testing for excessive periods of time, as long as over twenty years in some cases.

b.  Failed to investigate allegations of sexual assault;

c.  Fraudulently concealed Plaintiff's cause of action;

d.  Violated Plaintiff's rights pursuant to the Due Process Clause and Equal Protection Clause.

186.  Defendants' intentional conduct was so extreme and outrageous as to go beyond all possible bounds of decency.

187.  Defendants' intentional conduct occurred repeatedly for over twenty years.

188.  As a result, Plaintiff experienced severe fright, horror, grief, shame, humiliation and

worry.

189.   No reasonable person, especially a minor, could have endure the Defendants' conduct.

190.   That the actions taken by the Defendants against Plaintiff Meaghan Ybos are separate and distinct from the actions taken by the other Plaintiffs.

191.   As a direct and proximate result of the Defendants' conduct, Plaintiff suffered injuries, including but not limited to compensatory damages for physical injury, emotional pain, suffering, mental anguish and other non-pecuniary losses.

WHEREFORE, Meaghan Ybos demands judgment against Defendants, in an amount to be determined at trial, and any other relief the Court deems just and proper.

Count Nine

Negligence - Willful and Wanton Conduct

192.   The Plaintiff restates, reiterates and incorporates by reference  all of the allegations contained in paragraphs 1-191 as if set forth herein verbatim.

193.   This Count is brought on behalf of Meaghan Ybos.

194.   At all times relevant herein, the employees of Defendants  were acting within the scope of their employment with Defendants.

195.   Defendants, by and through their agents, willfully and wantonly and/or with reckless disregard, breached the following duties:

a.   Failed to submit the sexual assault evidence kits for testing for excessive periods of time, as long as over twenty years in some cases;

b.   Failed to investigate allegations of sexual assault;

c.   Fraudulently concealed Plaintiff's causes of actions against  Defendants and other third parties;

    d.      Violated Plaintiff's rights pursuant to the Due Process Clause and Equal

Protection Clause; and

    e.      Was otherwise willful and wanton.

196.    That the actions taken by the Defendants against Plaintiff Meaghan Ybos are separate and

distinct from the actions taken by the other Plaintiffs.

197.    As a direct and proximate result of Defendant's conduct, Plaintiff suffered injuries,

including but not limited to compensatory damages for physical injury, emotional pain, suffering,

mental anguish and other non-pecuniary losses.

    WHEREFORE, Meaghan Ybos demands judgment against Defendants, in an amount to

be determined at trial, and any other relief the Court deems just and proper.

Count Ten

42 U.S.C. Sec. 1985

Conspiracy as to the Deprivation of Plaintiffs' Constitutional Rights and

Privileges

198.    The Plaintiff restates, reiterates and incorporates by reference  all of the allegations

contained in paragraphs 1-197 as if set forth herein verbatim.

199.    This Count is brought on behalf of Meaghan Ybos.

200.    This Count is brought pursuant to 42 U.S.C. Sec. 1985, against the Defendants.

201.    At all times relevant herein, the employees of Defendants were acting in the scope of

their employment with Defendants.

202.    Defendants, by and through its agents, purposefully, knowingly and willfully conspired to

the following:

    a.      Adopting a policy, procedure, and/or practice of failing to submit sexual assault

evidence test kits.

       b.      Adopting a policy, procedure and/or practice of not investigating allegations of sexual assault.

203.    The conspiracy was motivated by gender.

204.    Defendants' policies, procedures, and/or practices with regard to investigation or sexual assaults intentionally and disparately impacted female victims.

205.    Moreover, Defendants, by or through its agents, knowingly and willfully conspired to the following:

       a.      Failed to submit Plaintiff sexual assault evidence test kits for several years;

       b.      Failed to investigate the allegations of rape of Plaintiff;

       c.      Fraudulently concealed the Plaintiff's causes of action against Defendants other other parties;

       d.      Violated Plaintiff's rights pursuant to the Due Process Clause; and

       e.      Otherwise conspired to prevent or hinder the constituted authorities of Tennessee from giving or securing to Plaintiff the equal protection of the laws.

206.    The conspiracy was intentional and due to Plaintiff's gender as a female.

207.    Defendants, by and through their officers, violated Plaintiff's civil rights when:

       a.      An express policy that, when enforced, caused a constitutional deprivation;

       b.      A widespread practice that, although not authorized by written law or express municipal policy, was so permanent and well settled as to constitute a custom or usage with the force of law;

       c.      The constitutional injury was caused by a person with final policymaking authority;

      d.      Defendants knew about the conduct and facilitated it, approved it, condoned it, and/or ignored it.

208.    As a direct and proximate result of Defendants' conduct, Defendants deprived Plaintiff of rights and privileges, including but not limited to:

      a.      Protection of their property interest in their persons; and

      b.      Protection of their right to the courts.

209.    That the actions taken by the Defendants against Plaintiff Meaghan Ybos are separate and distinct from the actions taken by the other Plaintiffs.

209.    The above-described conduct of Defendants constitutes a violation of Section 1985. Plaintiff is entitled to compensatory damages for physical injury, emotional pain, suffering, mental anguish and other non-pecuniary losses.

      WHEREFORE, Meaghan Ybos demands judgment against Defendants, in an amount to be determined at trial, and any other relief the Court deems just and proper.

## MADISON GRAVES

### Count One

### Violation of 42 U.S.C. Sec. 1983 Due Process Violation

210.    The Plaintiff restates, reiterates and incorporates by reference all of the allegations contained in paragraphs 1-209 as if set forth herein verbatim.

211.    This Count if brought on behalf of Madison Graves.

212.    This Count is brought pursuant to 42 U.S.C. Sec. 1983, against the Defendants.

213.    At all times relevant herein, Defendants acted under the color of state law.

214.    At all times relevant herein, Defendants knew that victims of sexual assault had provided evidence of sexual assault that had been placed in sexual assault evidence kits, and that

Defendants were not taking steps to investigate properly the allegations and were not sending the sexual assault kits for testing.

215.    Defendants had a duty to submit the sexual assault kits for testing.

216.    Furthermore, to the extent any of the Plaintiffs suffered sexual assaults by the same perpetrators after they had made reports to Defendants, this created a special relationship between the parties and consequently the Defendants had a duty to intervene and protect the Plaintiff from those perpetrators.

217.    At all times relevant herein, Defendants with deliberate indifference, intentionally, willfully and wantonly, and/or with reckless disregard deprived Plaintiff of rights and/or privileges secured by the constitution, including but not limited to:

       i.       Defendants violated Plaintiff's Due Process Clause property interest in their DNA samples, which had been provided and stored at the Defendants facility, and their right to redress in the courts, by failing to investigate, submit sexual assault evidence kits, or arrest the accused;

       ii.      Defendants violated Plaintiff's Due Process Clause property interests in their persons, by failing to investigate, submit sexual assault evidence kits, or arrest the accused.

218.    Defendants with deliberate indifference, failed to train its police offices as to the rights of person with whom the police come into contact, including but not limited to Plaintiff.

219.    Defendant's deliberate indifference, willfully and wantonly, created a danger of and increased the risk of harm by sexual abuse, and/or fostered an environment to exist and continue in which a victim is sexually abused; and/or is in fear of sexual assault.

220.    Defendant violated the Plaintiff's civil rights by having an express policy that, when enforced, caused a constitutional deprivation to Plaintiff, or by having a widespread practice and/or custom that, although not authorized by written law or express municipal policy, was so

permanent and well settled as to constitute a custom or usage with the force of law.

221.    The constitutional injury inflicted by Defendant was caused by a person with final

policymaking authority at the Defendants.

222.    Defendants knew about the above-described conduct and facilitated it, approved it,

condoned it, and/or turned a blind eye to the conduct.

223.    That the actions taken by the Defendants against Plaintiff Madison Graves are separate

and distinct from the actions taken by the other Plaintiffs.

224.    The above-described conduct of Defendants constitutes a violation of Section 1983.

Plaintiff is entitled to compensatory damages for physical injury, emotional pain, suffering,

mental anguish and other non-pecuniary losses.

WHEREFORE, Plaintiff Madison Graves demands judgment against Defendants, in an

amount to be determined at trial, and any other relief the Court deems just and proper.

Count Two

Violation of 42 U.S.C. Sec. 1983 Equal Protection Violation

225.    The Plaintiff restates, reiterates and incorporates by reference all of the allegations

contained in paragraphs 1-224 as if set forth herein verbatim.

226.    This Count if brought on behalf of Plaintiff Madison Graves.

227.    This Count is brought pursuant to 42 U.S.C. Sec. 1983, against the Defendants.

228.    At all times relevant herein, Defendants acted under the color of state law.

229.    At all times relevant herein, Defendants knew that victims of sexual assault had provided

evidence of sexual assault that had been placed in sexual assault evidence kits, and that

Defendants were not taking steps to investigate properly the allegations and were not sending the

sexual assault kits for testing.

230.    At all times relevant herein, Defendants with deliberate indifference, intentionally, willfully and wantonly, and/or with reckless disregard deprived Plaintiff of rights and/or privileges secured by the constitution, including but not limited to:

      i.    Defendants violated Plaintiff's Due Process Clause property interest in their DNA samples, which had been provided and stored at the Defendant's facility, and their right to redress in the courts, by failing to investigate, submit sexual assault evidence kits, or arrest the accused;

      ii.    Defendants violated Plaintiff's Due Process Clause property interests in their persons, by failing to investigate, submit sexual assault evidence kits, or arrest the accused.

231.    Defendants with deliberate indifference, failed to train its police offices as to the rights of person with whom the police come into contact, including but not limited to Plaintiff.

232.    Defendant's deliberate indifference, willfully and wantonly, created a danger of and increased the risk of harm by sexual abuse, and/or fostered an environment to exist and continue in which a victim is sexually abused; and/or is in fear of sexual assault.

233.    Defendants' conduct was motivated by gender.

234.    Defendants' conduct was intentional and due to the Plaintiff's female gender.

235.    Defendants have a history of discriminating against females. Defendants treat domestic violence abuse reports from women with less priority than other crimes not involving women reporting domestic violence abuse.

236.    Defendants violated the Plaintiff's civil rights by having an express policy that, when enforced, caused a constitutional deprivation to Plaintiff, or by having a widespread practice and/or custom that, although not authorized by written law or express municipal policy, was so

permanent and well settled as to constitute a custom or usage with the force of law.

237.   The constitutional injury inflicted by Defendants was caused by a person with final policymaking authority at the Defendants.

238.   Defendants knew about the above-described conduct and facilitated it, approved it, condoned it, and/or turned a blind eye to the conduct.

240.   That the actions taken by the Defendants against Plaintiff Madison Graves are separate and distinct from the actions taken by the other Plaintiffs.

241.   The above-described conduct of Defendants constitutes a violation of Section 1983. Plaintiff is entitled to compensatory damages for physical injury, emotional pain, suffering, mental anguish and other non-pecuniary losses.

WHEREFORE, Madison Graves demands judgment against Defendants, in an amount to be determined at trial, and any other relief the Court deems just and proper.

Count Three

Violation of 42 U.S.C. Sec. 1983 Fourth Amendment Violation

242.   The Plaintiff restates, reiterates and incorporates by reference all of the allegations contained in paragraphs 1-241 as if set forth herein verbatim.

243.   This Count if brought on behalf of Madison Graves.

244.   This Count is brought pursuant to 42 U.S.C. Sec. 1983, against the Defendants.

245.   At all times relevant herein, Defendants acted under the color of state law.

246.   At all times relevant herein, Defendants knew that victims of sexual assault had provided evidence of sexual assault that had been placed in sexual assault evidence kits, and that Defendants were not taking steps to investigate properly the allegations and were not sending the sexual assault kits for testing.

247.    Defendants had a duty to submit the sexual assault kits for testing.

248.    Furthermore, to the extent the Plaintiffs suffered sexual assaults by the same perpetrators after they had made reports to Defendants, this created a special relationship between the parties and consequently the Defendants had a duty to intervene and protect the Plaintiff from those perpetrators.

249.    At all times relevant herein, Defendants with deliberate indifference, intentionally, willfully and wantonly, and/or with reckless disregard deprived Plaintiff of rights and/or privileges secured by the constitution, including but not limited to:

    i.      Defendants violated Plaintiff's Due Process Clause property interest in their DNA samples, which had been provided and stored at the Defendants' facility, and their right to redress in the courts, by failing to investigate, submit sexual assault evidence kits, or arrest the accused;

    ii.     Defendants violated Plaintiff's Due Process Clause property interests in their persons, by failing to investigate, submit sexual assault evidence kits, or arrest the accused.

250.    Defendants with deliberate indifference, failed to train its police offices as to the rights of person with whom the police come into contact, including but not limited to Plaintiff.

251.    Defendants' deliberate indifference, willfully and wantonly, created a danger of and increased the risk of harm by sexual abuse, and/or fostered an environment to exist and continue in which a victim is sexually abused; and/or is in fear of sexual assault.

252.    Defendants violated the Plaintiff's by having an express policy that, when enforced, caused a constitutional deprivation to Plaintiff, or by having a widespread practice and/or custom that, although not authorized by written law or express municipal policy, was so permanent and

well settled as to constitute a custom or usage with the force of law.

253.    After being a victim of a sexual assault Defendants requested Plaintiff to submit personal body fluids and other material to be collected in a sexual assault evidence kit.

254.    Plaintiff was told by the Defendants that the purpose of this request was so that test could be conducted in order to aid law enforcement in the capture of the perpetrators of the sexual assault. This representation was the reason Plaintiff agreed to submit to the examination.

255.    After attaining the body fluids and other evidence, Defendants failed to conduct the promised test.

256.    Based upon information and belief, at the time Defendants requested the collection of said body fluids and other evidence, Defendants knew that said materials were not to be tested.

257.    The collection of body fluids and other evidence, which was not tested, constitutes an unlawful search and seizure in violation of the Fourth Amendment on the part of Defendants.

258.    The constitutional injury inflicted by Defendant was caused by a person with final policymaking authority at the Defendants.

259.    Defendants knew about the above-described conduct and facilitated it, approved it, condoned it, and/or turned a blind eye to the conduct.

260.    That the actions taken by the Defendants against Plaintiff Madison Graves are separate and distinct from the actions taken by the other Plaintiffs.

261.    The above-described conduct of Defendants constitutes a violation of Section 1983. Plaintiff is entitled to compensatory damages for physical injury, emotional pain, suffering, mental anguish and other non-pecuniary losses.

        WHEREFORE, Madison Graves demands judgment against Defendants, in an amount to be determined at trial, and any other relief the Court deems just and proper.

Count Four

Negligence (Injury to the Body)

262.    The Plaintiff restates, reiterates and incorporates by reference  all of the allegations contained in paragraphs 1-261 as if set forth herein verbatim.

263.    As the custodian of the sexual assault kits, Defendants owed a duty to Plaintiff.

264.    The failure to test these sexual assault kits constitutes a breach the duty owed to Plaintiff.

265.    The failure to test these sexual assault kits placed the physical well-being of Plaintiff in peril.

266.    That the failure to test these sexual assault kits on the part of Defendants constitutes an act of negligence.

267.    The failure to investigate these sexual assault cases constitutes a breach the duty owed to Plaintiff.

268.    The failure to investigate these sexual assault cases placed the physical well-being of Plaintiff in peril.

269.    That the failure to investigate these sexual assault cases on the part of Defendants constitutes an act of negligence.

270.    The failure to identify the perpetrator of  these sexual assaults constitutes a breach the duty owed to Plaintiff.

271.    The failure to identify the perpetrator of these sexual assaults placed the physical well-being of Plaintiff in peril.

272.    That the failure to identify the perpetrator of sexual assaults on the part of Defendants constitutes an act of negligence.

273.    The failure to apprehend, arrest or otherwise incarcerate the perpetrator of  these sexual

assaults constitutes a breach the duty owed to Plaintiff.

274.    The failure to apprehend, arrest or otherwise incarcerate the perpetrator of these sexual assaults placed the physical well-being of Plaintiff in peril.

275.    That the failure to apprehend, arrest or otherwise incarcerate the perpetrator of sexual assaults on the part of Defendants constitutes an act of negligence.

276.    As a direct and proximate cause of the acts of negligence on the part of Defendants, Plaintiff suffered severe physical harm and permanent injuries to the body.

277.    The above list is not all inclusive. It is the sincere belief that as discovery in this litigation goes forward there will be additional acts of negligence on the part of these Defendants will be found. As these additional acts of negligence are found, these Plaintiff reserves the right to amend this Complaint.

278.    The broad actions alleged above were taken with sufficient consistency to rise to the level of a custom which has the force of law.

279.    That the actions taken by the Defendants against Plaintiff Madison Graves are separate and distinct from the actions taken by the other Plaintiffs.

280.    The above-described conduct of Defendants constitutes negligence. Plaintiff is entitled to compensatory damages for physical injury, emotional pain, suffering, mental anguish and other non-pecuniary losses.

WHEREFORE, Madison Graves demands judgment against Defendants, in an amount to be determined at trial, and any other relief the Court deems just and proper.

Count Five

Negligence (Injury to Property)

281.    The Plaintiff restates, reiterates and incorporates by reference  all of the allegations

contained in paragraphs 1-280 as if set forth herein verbatim.

282.    As the custodian of the sexual assault kits, Defendants owed a duty to Plaintiff.

283.    The failure to test these sexual assault kits constitutes a breach the duty owed to Plaintiff.

284.    The failure to test these sexual assault kits placed the property of Plaintiff in peril.

285.    That the failure to test these sexual assault kits on the part of Defendants constitutes an act of negligence.

286.    The failure to investigate these sexual assault cases constitutes a breach the duty owed to Plaintiff.

287.    The failure to investigate these sexual assault cases placed the property of Plaintiff in peril.

288.    That the failure to investigate these sexual assault cases on the part of Defendants constitutes an act of negligence.

289.    The failure to identify the perpetrator of these sexual assaults constitutes a breach the duty owed to Plaintiff.

290.    The failure to identify the perpetrator of these sexual assaults placed the property of Plaintiff in peril.

291.    That the failure to identify the perpetrator of sexual assaults on the part of Defendants constitutes an act of negligence.

292.    The failure to apprehend, arrest or otherwise incarcerate the perpetrator of these sexual assaults constitutes a breach the duty owed to Plaintiff.

293.    The failure to apprehend, arrest or otherwise incarcerate the perpetrator of these sexual assaults placed the property of Plaintiff in peril.

294.    That the failure to apprehend, arrest or otherwise incarcerate the perpetrator of sexual

assaults on the part of Defendants constitutes an act of negligence.

295.    As a direct and proximate cause of the acts of negligence on the part of Defendants,
Plaintiff suffered sever injury to their property.

296.    The above list is not all inclusive. It is the sincere belief that as discovery in this
litigation goes forward there will be additional acts of negligence on the part of these Defendants
will be found. As these additional acts of negligence are found, these Plaintiffs reserve the right
to amend this Complaint.

297.    That the actions taken by the Defendants against Plaintiff Madison Graves are separate
and distinct from the actions taken by the other Plaintiffs.

298.    The above-described conduct of Defendants constitutes negligence. Plaintiff is entitled to
compensatory damages for property, emotional pain, suffering, mental anguish and other non-
pecuniary losses associated with such loss.

WHEREFORE, Madison Graves demands judgment against Defendants, in an amount to
be determined at trial, and any other relief the Court deems just and proper.

Count Six

Gross Negligence

299.    The Plaintiff restates, reiterates and incorporates by reference all of the allegations
contained in  paragraphs 1-298 as if set forth herein verbatim.

300.    The fact that there are in excess of 12,000 untested sexual assault evidence kits that have
accumulated over a period of approximately thirty years constitutes an act of gross negligence.

301.    That the actions taken by the Defendants against Plaintiff Madison Graves are separate
and distinct from the actions taken by the other Plaintiffs.

302.    The above-described conduct of Defendants constitutes gross negligence. Plaintiff is

entitled to compensatory damages for property, emotional pain, suffering, mental anguish and other non-pecuniary losses associated with such loss.

WHEREFORE, Madison Graves demands judgment against Defendants, in an amount to be determined at trial, and any other relief the Court deems just and proper.

Count Seven

Breach of Contract – Detrimental Reliance

303.    The Plaintiff restates, reiterates and incorporates by reference all of the allegations contained in  paragraphs 1-302 as if set forth herein verbatim.

304.    Upon obtaining permission to attain the body fluid and other evidence for the sexual assault evidence kits, Defendants had Plaintiff sign paperwork, including but not limited to a consent form.

305.    These signatures and permission to attain these bodily fluids and other evidence were acquired with the express promise that the materials attained would be properly tested.

306.    This express promise was consideration.

307.    As such, Defendants entered into a valid contract to test the materials attained in the sexual assault kits based upon the promise to test these materials.

308.    Defendants failed to test the sexual assault kits of Plaintiff  in express breach of this promise.

309.    As such, Defendants are is in breach of contract with Plaintiff.

310.    Plaintiffs herein entrusted the Defendants with their personal body fluid samples and the DNA evidence as to the identity of their assailant; this agreement was made on the express assurance said evidence would diligently be used to investigate and prosecute the crime in question. This express assurance was not kept and was a violation of a material term upon which

Plaintiff agreed to the testing and release of evidence.

311.   That the actions taken by the Defendants against Plaintiff Madison Graves are separate and distinct from the actions taken by the other Plaintiffs.

312.   The above-described conduct of Defendants constitutes breach of contract. Plaintiff is entitled to compensatory damages for said breach and all damages associated with said breach.

WHEREFORE, Madison Graves demands judgment against Defendants, in an amount to be determined at trial, and any other relief the Court deems just and proper.

Count Eight

Intentional Infliction of Emotion Distress

313.   The Plaintiff restates, reiterates and incorporates by reference  all of the allegations contained in paragraphs 1-312 as if set forth herein verbatim.

314.   This Count is brought on behalf of Madison Graves.

315.   Defendants, by and through its agents, intentionally breached the following duties:

a.      Failed to submit the sexual assault evidence kits for testing for excessive periods of time, as long as over twenty years in some cases.

b.      Failed to investigate allegations of sexual assault;

c.      Fraudulently concealed Plaintiff's cause of action;

d.      Violated Plaintiff's rights pursuant to the Due Process Clause and Equal Protection Clause.

316.   Defendants' intentional conduct was so extreme and outrageous as to go beyond all possible bounds of decency.

317.   Defendants' intentional conduct occurred repeatedly for over twenty years.

318.   As a result, Plaintiff experienced severe fright, horror, grief, shame, humiliation and

worry.

319.    No reasonable person, especially a minor, could have endure the Defendants' conduct.

320.    That the actions taken by the Defendants against Plaintiff Madison Graves are separate and distinct from the actions taken by the other Plaintiffs.

321.    As a direct and proximate result of the Defendants' conduct, Plaintiff suffered injuries, including but not limited to compensatory damages for physical injury, emotional pain, suffering, mental anguish and other non-pecuniary losses.

WHEREFORE, Madison Graves demands judgment against Defendants, in an amount to be determined at trial, and any other relief the Court deems just and proper.

Count Nine

Negligence - Willful and Wanton Conduct

322.    The Plaintiff restates, reiterates and incorporates by reference  all of the allegations contained in paragraphs 1-321 as if set forth herein verbatim.

323.    This Count is brought on behalf of Madison Graves.

324.    At all times relevant herein, the employees of Defendants  were acting within the scope of their employment with Defendants.

325.    Defendants, by and through their agents, willfully and wantonly and/or with reckless disregard, breached the following duties:

a.    Failed to submit the sexual assault evidence kits for testing for excessive periods of time, as long as over twenty years in some cases;

b.    Failed to investigate allegations of sexual assault;

c.    Fraudulently concealed Plaintiff's causes of actions against  Defendants and other third parties;

     d.      Violated Plaintiff's rights pursuant to the Due Process Clause and Equal

Protection Clause; and

     e.      Was otherwise willful and wanton.

326.    That the actions taken by the Defendants against Plaintiff Madison Graves are separate

and distinct from the actions taken by the other Plaintiffs.

327.    As a direct and proximate result of Defendant's conduct, Plaintiff suffered injuries,

including but not limited to compensatory damages for physical injury, emotional pain, suffering,

mental anguish and other non-pecuniary losses.

     WHEREFORE, Madison Graves demands judgment against Defendants, in an amount to

be determined at trial, and any other relief the Court deems just and proper.

Count Ten

42 U.S.C. Sec. 1985

Conspiracy as to the Deprivation of Plaintiffs' Constitutional Rights and

Privileges

328.    The Plaintiff restates, reiterates and incorporates by reference  all of the allegations

contained in paragraphs 1-327 as if set forth herein verbatim.

329.    This Count is brought on behalf of Madison Graves.

330.    This Count is brought pursuant to 42 U.S.C. Sec. 1985, against the Defendants.

331.    At all times relevant herein, the employees of Defendants were acting in the scope of

their employment with Defendants.

332.    Defendants, by and through its agents, purposefully, knowingly and willfully conspired to

the following:

     a.      Adopting a policy, procedure, and/or practice of failing to submit sexual assault

evidence test kits.

      b.     Adopting a policy, procedure and/or practice of not investigating allegations of sexual assault.

333.    The conspiracy was motivated by gender.

334.    Defendants' policies, procedures, and/or practices with regard to investigation or sexual assaults intentionally and disparately impacted female victims.

335.    Moreover, Defendants, by or through its agents, knowingly and willfully conspired to the following:

      a.     Failed to submit Plaintiff sexual assault evidence test kits for several years;

      b.     Failed to investigate the allegations of rape of Plaintiff;

      c.     Fraudulently concealed the Plaintiff's causes of action against Defendants other other parties;

      d.     Violated Plaintiff's rights pursuant to the Due Process Clause; and

      e.     Otherwise conspired to prevent or hinder the constituted authorities of Tennessee from giving or securing to Plaintiff the equal protection of the laws.

336.    The conspiracy was intentional and due to Plaintiff's gender as a female.

337.    Defendants, by and through their officers, violated Plaintiff's civil rights when:

      a.     An express policy that , when enforced, caused a constitutional deprivation;

      b.     A widespread practice that, although not authorized by written law or express municipal policy, was so permanent and well settled as to constitute a custom or usage with the force of law;

      c.     The constitutional injury was caused by a person with final policymaking authority;

d. Defendants knew about the conduct and facilitated it, approved it, condoned it, and/or ignored it.

338. As a direct and proximate result of Defendants' conduct, Defendants deprived Plaintiff of rights and privileges, including but not limited to:

a. Protection of their property interest in their persons; and

b. Protection of their right to the courts.

339. That the actions taken by the Defendants against Plaintiff Madison Graves are separate and distinct from the actions taken by the other Plaintiffs.

340. The above-described conduct of Defendants constitutes a violation of Section 1985. Plaintiff is entitled to compensatory damages for physical injury, emotional pain, suffering, mental anguish and other non-pecuniary losses.

WHEREFORE, Madison Graves demands judgment against Defendants, in an amount to be determined at trial, and any other relief the Court deems just and proper.

## **RACHEL JOHNSON**

### Count One

### Violation of 42 U.S.C. Sec. 1983 Due Process Violation

341. The Plaintiff restates, reiterates and incorporates by reference all of the allegations contained in paragraphs 1-340 as if set forth herein verbatim.

342. This Count if brought on behalf of Rachel Johnson.

343. This Count is brought pursuant to 42 U.S.C. Sec. 1983, against the Defendants.

344. At all times relevant herein, Defendants acted under the color of state law.

345. At all times relevant herein, Defendants knew that victims of sexual assault had provided evidence of sexual assault that had been placed in sexual assault evidence kits, and that

Defendants were not taking steps to investigate properly the allegations and were not sending the sexual assault kits for testing.

346.   Defendants had a duty to submit the sexual assault kits for testing.

347.   Furthermore, to the extent any of the Plaintiffs suffered sexual assaults by the same perpetrators after they had made reports to Defendants, this created a special relationship between the parties and consequently the Defendants had a duty to intervene and protect the Plaintiff from those perpetrators.

348.   At all times relevant herein, Defendants with deliberate indifference, intentionally, willfully and wantonly, and/or with reckless disregard deprived Plaintiff of rights and/or privileges secured by the constitution, including but not limited to:

     i.   Defendants violated Plaintiff's Due Process Clause property interest in their DNA samples, which had been provided and stored at the Defendants facility, and their right to redress in the courts, by failing to investigate, submit sexual assault evidence kits, or arrest the accused;

     ii.   Defendants violated Plaintiff's Due Process Clause property interests in their persons, by failing to investigate, submit sexual assault evidence kits, or arrest the accused.

349.   Defendants with deliberate indifference, failed to train its police offices as to the rights of person with whom the police come into contact, including but not limited to Plaintiff.

350.   Defendant's deliberate indifference, willfully and wantonly, created a danger of and increased the risk of harm by sexual abuse, and/or fostered an environment to exist and continue in which a victim is sexually abused; and/or is in fear of sexual assault.

351.   Defendant violated the Plaintiff's civil rights by having an express policy that, when enforced, caused a constitutional deprivation to Plaintiff, or by having a widespread practice and/or custom that, although not authorized by written law or express municipal policy, was so

permanent and well settled as to constitute a custom or usage with the force of law.

352.    The constitutional injury inflicted by Defendant was caused by a person with final

policymaking authority at the Defendants.

353.    Defendants knew about the above-described conduct and facilitated it, approved it,

condoned it, and/or turned a blind eye to the conduct.

354.    That the actions taken by the Defendants against Plaintiff Rachel Johnson are separate

and distinct from the actions taken by the other Plaintiffs.

355.    The above-described conduct of Defendants constitutes a violation of Section 1983.

Plaintiff is entitled to compensatory damages for physical injury, emotional pain, suffering,

mental anguish and other non-pecuniary losses.

WHEREFORE, Plaintiff Rachel Johnson demands judgment against Defendants, in an

amount to be determined at trial, and any other relief the Court deems just and proper.

Count Two

Violation of 42 U.S.C. Sec. 1983 Equal Protection Violation

356.    The Plaintiff restates, reiterates and incorporates by reference  all of the allegations

contained in paragraphs 1-355 as if set forth herein verbatim.

357.    This Count if brought on behalf of Plaintiff Rachel Johnson.

358.    This Count is brought pursuant to 42 U.S.C. Sec. 1983, against the Defendants.

359.    At all times relevant herein, Defendants acted under the color of state law.

360.    At all times relevant herein, Defendants knew that victims of sexual assault had provided

evidence of sexual assault that had been placed in sexual assault evidence kits, and that

Defendants were not taking steps to investigate properly the allegations and were not sending the

sexual assault kits for testing.

361.    At all times relevant herein, Defendants with deliberate indifference, intentionally, willfully and wantonly, and/or with reckless disregard deprived Plaintiff of rights and/or privileges secured by the constitution, including but not limited to:

      i.    Defendants violated Plaintiff's Due Process Clause property interest in their DNA samples, which had been provided and stored at the Defendant's facility, and their right to redress in the courts, by failing to investigate, submit sexual assault evidence kits, or arrest the accused;

      ii.    Defendants violated Plaintiff's Due Process Clause property interests in their persons, by failing to investigate, submit sexual assault evidence kits, or arrest the accused.

362.    Defendants with deliberate indifference, failed to train its police offices as to the rights of person with whom the police come into contact, including but not limited to Plaintiff.

363.    Defendant's deliberate indifference, willfully and wantonly, created a danger of and increased the risk of harm by sexual abuse, and/or fostered an environment to exist and continue in which a victim is sexually abused; and/or is in fear of sexual assault.

364.    Defendants' conduct was motivated by gender.

365.    Defendants' conduct was intentional and due to the Plaintiff's female gender.

366.    Defendants have a history of discriminating against females. Defendants treat domestic violence abuse reports from women with less priority than other crimes not involving women reporting domestic violence abuse.

367.    Defendants violated the Plaintiff's civil rights by having an express policy that, when enforced, caused a constitutional deprivation to Plaintiff, or by having a widespread practice and/or custom that, although not authorized by written law or express municipal policy, was so

permanent and well settled as to constitute a custom or usage with the force of law.

368.     The constitutional injury inflicted by Defendants was caused by a person with final

policymaking authority at the Defendants.

369.     Defendants knew about the above-described conduct and facilitated it, approved it,

condoned it, and/or turned a blind eye to the conduct.

370.     That the actions taken by the Defendants against Plaintiff Rachel Johnson are separate

and distinct from the actions taken by the other Plaintiffs.

371.     The above-described conduct of Defendants constitutes a violation of Section 1983.

Plaintiff is entitled to compensatory damages for physical injury, emotional pain, suffering,

mental anguish and other non-pecuniary losses.

    WHEREFORE, Rachel Johnson demands judgment against Defendants, in an amount to

be determined at trial, and any other relief the Court deems just and proper.

Count Three

Violation of 42 U.S.C. Sec. 1983 Fourth Amendment Violation

372.     The Plaintiff restates, reiterates and incorporates by reference all of the allegations

contained in paragraphs 1-371 as if set forth herein verbatim.

373.     This Count if brought on behalf of Rachel Johnson.

374.     This Count is brought pursuant to 42 U.S.C. Sec. 1983, against the Defendants.

375.     At all times relevant herein, Defendants acted under the color of state law.

376.     At all times relevant herein, Defendants knew that victims of sexual assault had provided

evidence of sexual assault that had been placed in sexual assault evidence kits, and that

Defendants were not taking steps to investigate properly the allegations and were not sending the

sexual assault kits for testing.

377.    Defendants had a duty to submit the sexual assault kits for testing.

378.    Furthermore, to the extent the Plaintiffs suffered sexual assaults by the same perpetrators after they had made reports to Defendants, this created a special relationship between the parties and consequently the Defendants had a duty to intervene and protect the Plaintiff from those perpetrators.

379.    At all times relevant herein, Defendants with deliberate indifference, intentionally, willfully and wantonly, and/or with reckless disregard deprived Plaintiff of rights and/or privileges secured by the constitution, including but not limited to:

      i.    Defendants violated Plaintiff's Due Process Clause property interest in their DNA samples, which had been provided and stored at the Defendants' facility, and their right to redress in the courts, by failing to investigate, submit sexual assault evidence kits, or arrest the accused;

      ii.    Defendants violated Plaintiff's Due Process Clause property interests in their persons, by failing to investigate, submit sexual assault evidence kits, or arrest the accused.

380.    Defendants with deliberate indifference, failed to train its police offices as to the rights of person with whom the police come into contact, including but not limited to Plaintiff.

381.    Defendants' deliberate indifference, willfully and wantonly, created a danger of and increased the risk of harm by sexual abuse, and/or fostered an environment to exist and continue in which a victim is sexually abused; and/or is in fear of sexual assault.

382.    Defendants violated the Plaintiff's by having an express policy that, when enforced, caused a constitutional deprivation to Plaintiff, or by having a widespread practice and/or custom that, although not authorized by written law or express municipal policy, was so permanent and

well settled as to constitute a custom or usage with the force of law.

383.    After being a victim of a sexual assault Defendants requested Plaintiff to submit personal body fluids and other material to be collected in a sexual assault evidence kit.

384.    Plaintiff was told by the Defendants that the purpose of this request was so that test could be conducted in order to aid law enforcement in the capture of the perpetrators of the sexual assault. This representation was the reason Plaintiff agreed to submit to the examination.

385.    After attaining the body fluids and other evidence, Defendants failed to conduct the promised test.

386.    Based upon information and belief, at the time Defendants requested the collection of said body fluids and other evidence, Defendants knew that said materials were not to be tested.

387.    The collection of body fluids and other evidence, which was not tested, constitutes an unlawful search and seizure in violation of the Fourth Amendment on the part of Defendants.

388.    The constitutional injury inflicted by Defendant was caused by a person with final policymaking authority at the Defendants.

389.    Defendants knew about the above-described conduct and facilitated it, approved it, condoned it, and/or turned a blind eye to the conduct.

390.    That the actions taken by the Defendants against Plaintiff Rachel Johnson are separate and distinct from the actions taken by the other Plaintiffs.

391.    The above-described conduct of Defendants constitutes a violation of Section 1983. Plaintiff is entitled to compensatory damages for physical injury, emotional pain, suffering, mental anguish and other non-pecuniary losses.

        WHEREFORE, Rachel Johnson demands judgment against Defendants, in an amount to be determined at trial, and any other relief the Court deems just and proper.

Count Four

Negligence (Injury to the Body)

392.    The Plaintiff restates, reiterates and incorporates by reference all of the allegations contained in paragraphs 1-391 as if set forth herein verbatim.

393.    As the custodian of the sexual assault kits, Defendants owed a duty to Plaintiff.

394.    The failure to test these sexual assault kits constitutes a breach the duty owed to Plaintiff.

395.    The failure to test these sexual assault kits placed the physical well-being of Plaintiff in peril.

396.    That the failure to test these sexual assault kits on the part of Defendants constitutes an act of negligence.

397.    The failure to investigate these sexual assault cases constitutes a breach the duty owed to Plaintiff.

398.    The failure to investigate these sexual assault cases placed the physical well-being of Plaintiff in peril.

399.    That the failure to investigate these sexual assault cases on the part of Defendants constitutes an act of negligence.

400.    The failure to identify the perpetrator of these sexual assaults constitutes a breach the duty owed to Plaintiff.

401.    The failure to identify the perpetrator of these sexual assaults placed the physical well-being of Plaintiff in peril.

402.    That the failure to identify the perpetrator of sexual assaults on the part of Defendants constitutes an act of negligence.

403.    The failure to apprehend, arrest or otherwise incarcerate the perpetrator of these sexual

assaults constitutes a breach the duty owed to Plaintiff.

404.    The failure to apprehend, arrest or otherwise incarcerate the perpetrator of these sexual assaults placed the physical well-being of Plaintiff in peril.

405.    That the failure to apprehend, arrest or otherwise incarcerate the perpetrator of sexual assaults on the part of Defendants constitutes an act of negligence.

406.    As a direct and proximate cause of the acts of negligence on the part of Defendants, Plaintiff suffered severe physical harm and permanent injuries to the body.

407.    The above list is not all inclusive. It is the sincere belief that as discovery in this litigation goes forward there will be additional acts of negligence on the part of these Defendants will be found. As these additional acts of negligence are found, these Plaintiff reserves the right to amend this Complaint.

408.    The broad actions alleged above were taken with sufficient consistency to rise to the level of a custom which has the force of law.

409.    That the actions taken by the Defendants against Plaintiff Rachel Johnson are separate and distinct from the actions taken by the other Plaintiffs.

410.    The above-described conduct of Defendants constitutes negligence. Plaintiff is entitled to compensatory damages for physical injury, emotional pain, suffering, mental anguish and other non-pecuniary losses.

WHEREFORE, Rachel Johnson demands judgment against Defendants, in an amount to be determined at trial, and any other relief the Court deems just and proper.

Count Five

Negligence (Injury to Property)

411.    The Plaintiff restates, reiterates and incorporates by reference  all of the allegations

contained in paragraphs 1-410 as if set forth herein verbatim.

412.    As the custodian of the sexual assault kits, Defendants owed a duty to Plaintiff.

413.    The failure to test these sexual assault kits constitutes a breach the duty owed to Plaintiff.

414.    The failure to test these sexual assault kits placed the property of Plaintiff in peril.

415.    That the failure to test these sexual assault kits on the part of Defendants constitutes an act of negligence.

416.    The failure to investigate these sexual assault cases constitutes a breach the duty owed to Plaintiff.

417.    The failure to investigate these sexual assault cases placed the property of Plaintiff in peril.

418.    That the failure to investigate these sexual assault cases on the part of Defendants constitutes an act of negligence.

419.    The failure to identify the perpetrator of  these sexual assaults constitutes a breach the duty owed to Plaintiff.

420.    The failure to identify the perpetrator of these sexual assaults placed the property of Plaintiff in peril.

421.    That the failure to identify the perpetrator of sexual assaults on the part of Defendants constitutes an act of negligence.

422.    The failure to apprehend, arrest or otherwise incarcerate the perpetrator of  these sexual assaults constitutes a breach the duty owed to Plaintiff.

423.    The failure to apprehend, arrest or otherwise incarcerate the perpetrator of these sexual assaults placed the property of Plaintiff  in peril.

424.    That the failure to apprehend, arrest or otherwise incarcerate the perpetrator of sexual

assaults on the part of Defendants constitutes an act of negligence.

425.    As a direct and proximate cause of the acts of negligence on the part of Defendants,

Plaintiff suffered sever injury to their property.

426.    The above list is not all inclusive. It is the sincere belief that as discovery in this

litigation goes forward there will be additional acts of negligence on the part of these Defendants

will be found. As these additional acts of negligence are found, these Plaintiffs reserve the right

to amend this Complaint.

427.    That the actions taken by the Defendants against Plaintiff Rachel Johnson are separate

and distinct from the actions taken by the other Plaintiffs.

428.    The above-described conduct of Defendants constitutes negligence. Plaintiff is entitled to

compensatory damages for property, emotional pain, suffering, mental anguish and other non-

pecuniary losses associated with such loss.

        WHEREFORE, Rachel Johnson demands judgment against Defendants, in an amount to

be determined at trial, and any other relief the Court deems just and proper.

Count Six

Gross Negligence

429.    The Plaintiff restates, reiterates and incorporates by reference all of the allegations

contained in  paragraphs 1-428 as if set forth herein verbatim.

430.    The fact that there are in excess of 12,000 untested sexual assault evidence kits that have

accumulated over a period of approximately thirty years constitutes an act of gross negligence.

431.    That the actions taken by the Defendants against Plaintiff Rachel Johnson are separate

and distinct from the actions taken by the other Plaintiffs.

432.    The above-described conduct of Defendants constitutes gross negligence. Plaintiff is

entitled to compensatory damages for property, emotional pain, suffering, mental anguish and other non-pecuniary losses associated with such loss.

WHEREFORE, Rachel Johnson demands judgment against Defendants, in an amount to be determined at trial, and any other relief the Court deems just and proper.

Count Seven

Breach of Contract – Detrimental Reliance

433.    The Plaintiff restates, reiterates and incorporates by reference all of the allegations contained in  paragraphs 1-432 as if set forth herein verbatim.

433.    Upon obtaining permission to attain the body fluid and other evidence for the sexual assault evidence kits, Defendants had Plaintiff sign paperwork, including but not limited to a consent form.

434.    These signatures and permission to attain these bodily fluids and other evidence were acquired with the express promise that the materials attained would be properly tested.

435.    This express promise was consideration.

436.    As such, Defendants entered into a valid contract to test the materials attained in the sexual assault kits based upon the promise to test these materials.

437.    Defendants failed to test the sexual assault kits of Plaintiff  in express breach of this promise.

438.    As such, Defendants are is in breach of contract with Plaintiff.

439.    Plaintiffs herein entrusted the Defendants with their personal body fluid samples and the DNA evidence as to the identity of their assailant; this agreement was made on the express assurance said evidence would diligently be used to investigate and prosecute the crime in question. This express assurance was not kept and was a violation of a material term upon which

Plaintiff agreed to the testing and release of evidence.

440.    That the actions taken by the Defendants against Plaintiff Rachel Johnson are separate and distinct from the actions taken by the other Plaintiffs.

441.    The above-described conduct of Defendants constitutes breach of contract. Plaintiff is entitled to compensatory damages for said breach and all damages associated with said breach.

WHEREFORE, Rachel Johnson demands judgment against Defendants, in an amount to be determined at trial, and any other relief the Court deems just and proper.

Count Eight

Intentional Infliction of Emotion Distress

442.    The Plaintiff restates, reiterates and incorporates by reference  all of the allegations contained in paragraphs 1-441 as if set forth herein verbatim.

443.    This Count is brought on behalf of Rachel Johnson.

444.    Defendants, by and through its agents, intentionally breached the following duties:

a.      Failed to submit the sexual assault evidence kits for testing for excessive periods of time, as long as over twenty years in some cases.

b.      Failed to investigate allegations of sexual assault;

c.      Fraudulently concealed Plaintiff's cause of action;

d.      Violated Plaintiff's rights pursuant to the Due Process Clause and Equal Protection Clause.

445.    Defendants' intentional conduct was so extreme and outrageous as to go beyond all possible bounds of decency.

446.    Defendants' intentional conduct occurred repeatedly for over twenty years.

447.    As a result, Plaintiff experienced severe fright, horror, grief, shame, humiliation and

worry.

448.    No reasonable person, especially a minor, could have endure the Defendants' conduct.

449.    That the actions taken by the Defendants against Plaintiff Rachel Johnson are separate and distinct from the actions taken by the other Plaintiffs.

450.    As a direct and proximate result of the Defendants' conduct, Plaintiff suffered injuries, including but not limited to compensatory damages for physical injury, emotional pain, suffering, mental anguish and other non-pecuniary losses.

WHEREFORE, Rachel Johnson demands judgment against Defendants, in an amount to be determined at trial, and any other relief the Court deems just and proper.

Count Nine

Negligence - Willful and Wanton Conduct

451.    The Plaintiff restates, reiterates and incorporates by reference  all of the allegations contained in paragraphs 1-450 as if set forth herein verbatim.

452.    This Count is brought on behalf of Rachel Johnson.

453.    At all times relevant herein, the employees of Defendants  were acting within the scope of their employment with Defendants.

454.    Defendants, by and through their agents, willfully and wantonly and/or with reckless disregard, breached the following duties:

a.    Failed to submit the sexual assault evidence kits for testing for excessive periods of time, as long as over twenty years in some cases;

b.    Failed to investigate allegations of sexual assault;

c.    Fraudulently concealed Plaintiff's causes of actions against  Defendants and other third parties;

    d.      Violated Plaintiff's rights pursuant to the Due Process Clause and Equal

Protection Clause; and

    e.      Was otherwise willful and wanton.

455.    That the actions taken by the Defendants against Plaintiff Rachel Johnson are separate

and distinct from the actions taken by the other Plaintiffs.

456.    As a direct and proximate result of Defendant's conduct, Plaintiff suffered injuries,

including but not limited to compensatory damages for physical injury, emotional pain, suffering,

mental anguish and other non-pecuniary losses.

    WHEREFORE, Rachel Johnson demands judgment against Defendants, in an amount to

be determined at trial, and any other relief the Court deems just and proper.

Count Ten

42 U.S.C. Sec. 1985

Conspiracy as to the Deprivation of Plaintiffs' Constitutional Rights and

Privileges

457.    The Plaintiff restates, reiterates and incorporates by reference  all of the allegations

contained in paragraphs 1-456 as if set forth herein verbatim.

458.    This Count is brought on behalf of Rachel Johnson.

459.    This Count is brought pursuant to 42 U.S.C. Sec. 1985, against the Defendants.

460.    At all times relevant herein, the employees of Defendants were acting in the scope of

their employment with Defendants.

461.    Defendants, by and through its agents, purposefully, knowingly and willfully conspired to

the following:

    a.      Adopting a policy, procedure, and/or practice of failing to submit sexual assault

evidence test kits.

    b.    Adopting a policy, procedure and/or practice of not investigating allegations of

sexual assault.

462.    The conspiracy was motivated by gender.

463.    Defendants' policies, procedures, and/or practices with regard to investigation or sexual

assaults intentionally and disparately impacted female victims.

464.    Moreover, Defendants, by or through its agents, knowingly and willfully conspired to the

following:

    a.    Failed to submit Plaintiff sexual assault evidence test kits for several years;

    b.    Failed to investigate the allegations of rape of Plaintiff;

    c.    Fraudulently concealed the Plaintiff's causes of action against Defendants other

other parties;

    d.    Violated Plaintiff's rights pursuant to the Due Process Clause; and

    e.    Otherwise conspired to prevent or hinder the constituted authorities of Tennessee

from giving or securing to Plaintiff the equal protection of the laws.

465.    The conspiracy was intentional and due to Plaintiff's gender as a female.

466.    Defendants, by and through their officers, violated Plaintiff's civil rights when:

    a.    An express policy that , when enforced, caused a constitutional deprivation;

    b.    A widespread practice that, although not authorized by written law or express

municipal policy, was so permanent and well settled as to constitute a custom or

usage with the force of law;

    c.    The constitutional injury was caused by a person with final policymaking

authority;

     d.      Defendants knew about the conduct and facilitated it, approved it, condoned it, and/or ignored it.

467.    As a direct and proximate result of Defendants' conduct, Defendants deprived Plaintiff of rights and privileges, including but not limited to:

     a.      Protection of their property interest in their persons; and

     b.      Protection of their right to the courts.

468.    That the actions taken by the Defendants against Plaintiff Rachel Johnson are separate and distinct from the actions taken by the other Plaintiffs.

469.    The above-described conduct of Defendants constitutes a violation of Section 1985. Plaintiff is entitled to compensatory damages for physical injury, emotional pain, suffering, mental anguish and other non-pecuniary losses.

    WHEREFORE, Rachel Johnson demands judgment against Defendants, in an amount to be determined at trial, and any other relief the Court deems just and proper.

    WHEREFORE, premises considered, the Plaintiffs pray:

1.    That proper process and notice issue and be served upon the Defendants herein requiring them to answer this Complaint.

2.    That the Plaintiffs reserves the right to amend the complaint.

3.    That upon a hearing of this cause that the matters in controversy be decided by a jury.

4.    That upon a hearing of this cause, the Plaintiff be awarded damages both compensatory, special, exemplary and punitive in an amount to be proven at a hearing of the cause.

5.    That upon a hearing of this cause, the Plaintiff be awarded attorney fees and

appropriate court cost and expenses for having to bring this action.

6.      For such other and further relief as may be just and proper within these premises.

Respectfully submitted,

s/Paul Forrest Craig
PAUL FORREST CRAIG #018359
Attorney for Plaintiffs
100 N. Main St., Ste. 923
Memphis, TN 38103
(901) 526-7837

s/Daniel Lofton
DANIEL O. LOFTON #27386
Attorney for Plaintiffs
100 N. Main St., Ste. 923
Memphis, TN 38103
(901) 526-7837